1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PRESS RENTALS, INC. f/k/a EAGLE NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GENESIS FLUID SOLUTIONS, LTD. and MICHAEL K. HODGES, <br><br> Defendants & Third-Party Plaintiffs <br><br> v. <br><br> U.S. BANCORP and U.S. BANK, N.A., <br><br> Third-Party Defendants. | Case No.: 5:11-CV-02579-EJD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS** <br><br> **[Re: Docket Nos. 116, 120]** |

The above-captioned suit involves an action originally brought by Plaintiff Press Rentals Inc. ("Press Rentals") against Genesis Fluid Solutions, Ltd. ("Genesis Fluid Solutions") and Michael K. Hodges ("Hodges") (collectively "Defendants" or "Third-Party Plaintiffs").

Defendants have brought a third-party complaint against Third-Party Defendants U.S. Bancorp ("Bancorp"), and U.S. Bank N.A. ("U.S. Bank") (collectively "Third-Party Defendants").

Presently before the Court are two related filings: 1) Third-Party Defendants' Motion to Dismiss the Second Amended Third Party Complaint, and 2) Plaintiff's Motion for Judgment on the Pleadings, or alternatively, Summary Judgment.  The Court found these matters appropriate for decision without oral argument pursuant to Local Civil Rule 7–1(b), and previously vacated the corresponding hearing date.  The Court has jurisdiction over this action under 28 U.S.C. §§ 1332 and 1367.  Having fully reviewed the parties' papers the Court GRANTS Third-Party Defendants' Motion to Dismiss and GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Judgment on the Pleadings.

## I.  BACKGROUND

### a.  Factual background

This case is the offspring of litigation between Press Rentals (formerly known as Eagle North America Inc.) and Genesis Fluid Solutions.  See Eagle North America Inc. v. Genesis Fluid Solutions, LTD, No. 08-CV-02060-RMW (N.D. Cal.).  Hodges was a named defendant in that litigation as Genesis Fluid Solutions' Chief Executive Officer and Director.  Docket Item No. 100, Am. Third-Party Compl. ¶ 29.  In June 2009, the parties reached a settlement agreement in which Genesis Fluid Solutions agreed to pay Eagle North America $25,000 on or before July 26, 2009; thereafter, it was required to pay fifteen monthly installments of $8,466.67 on the 26th day of each month starting in August 2009.  Docket Item No. 1, Compl., Ex. A, Settlement Agreement, § 1.

The Settlement Agreement includes a clause stating that "time is of the essence regarding the payment schedule" and that "each and every payment must be delivered in hand to Eagle on or before the due date."  Id.  The agreement also contained a "Cognovit Clause" that allows for the entry of a judgment by confession in the event of a breach by Genesis Fluid Solutions:

> In the event that Genesis does not fully comply with the payment provisions of this
> Agreement within the time periods stated herein, Eagle is permitted to file the attached
> Judgment by Confession documents with the Court. (Exhibits A, B, and C hereto). The

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

United States District Court
For the Northern District of California

1  Judgment by Confession will expressly include the principal sum of One Hundred Fifty

2  Two Thousand Dollars ($152,000.00), less any payments made by Genesis, plus interest

3  thereon accrued at the legal rate of ten percent (10%) per annum from June 26, 2009, plus

4  attorney's fees and costs—in amount according to proof—incurred by Eagle prior to June

5  26, 2009 in the United States District Court, Northern District of California, San Jose

6  Division, Case No. C08 02060 RMW, plus any attorney's fees and costs incurred by Eagle

7  in connection herewith after June 26, 2009.

8  Id. § 4.

9  On October 30, 2009, pursuant to a reverse merger transaction, Genesis Fluid Solutions

10 became the wholly-owned subsidiary of Genesis Fluid Solutions Holdings, Inc., which is now

11 known as Blue Earth Inc. ("Blue Earth"). Am. Third Party Compl. ¶ 18. Pursuant to this merger,

12 Blue Earth became obligated to pay the outstanding debts and obligations of Genesis Fluid

13 Solutions. Id. ¶ 21. Genesis Fluid Solutions alleges that that it informed Blue Earth of its

14 obligations under the Settlement Agreement with Press Rentals. Id. ¶¶ 21–22. Genesis Fluid

15 Solutions also alleges that Blue Earth made monthly payments to Press Rentals until May 2010.

16 Id. ¶¶ 25–26, 31. By April 27, 2010, Press Rentals had received a total of $101,200.30, and a

17 balance of $50,799.97 remained due on the Agreement. Id. ¶ 31.

18 Third-Party Plaintiffs allege that Blue Earth failed to make a payment that was due on May

19 26, 2010. Id. ¶ 32. When Hodges became aware of this, he attempted to draw a check from the

20 account of Genesis Fluid Solutions, but he did not have access to that account as it was controlled

21 by Blue Earth. Id. ¶ 34. On or around May 26, 2010, Hodges formed Genesis Water, Inc.

22 ("Genesis Water") and set up a bank account with U.S. Bank with the sole purpose of depositing

23 funds and forwarding them to Press Rentals as payment. Id. ¶¶ 35–42. Hodges avers that he

24 transferred $9,000 of his personal funds to this newly created Genesis Water account so as to cover

25 the missed payment. Id. ¶ 43. On or around May 28, 2010, he then wrote a check in the amount of

26 $9,000 from the Genesis Water account and sent it to Press Rentals. Id. ¶ 44. After Press Rentals

27

28

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

**United States District Court**
For the Northern District of California

1   received and accepted the check, Hodges alleges, U.S. Bank refused to honor the check, claiming

2   that there were insufficient funds in the account.  Id. ¶¶ 48–50.

3        On July 8, 2010, Press Rentals notified Genesis Fluid Solutions in writing of its breach of

4   the settlement agreement for failure to make a timely payment on May 26, 2010 and demanded

5   payment of $159,376.35 in accordance with the Cognovit Clause.  Id. ¶¶ 51, 54.  Genesis Fluid

6   Solutions did not acknowledge this demand; instead, it sent to Press Rentals several checks for

7   $8,466.67 in July, August, and September of 2010, one for $6,933.34 on September 3, none of

8   which Press Rentals cashed.  Id. ¶¶ 52–53.

9        **b.  Procedural history**

10       As a result of these events, Press Rentals sought to enforce the Cognovit Note by filing a

11   Judgment by Confession with this Court.  Id. ¶ 57.  On October 12, 2010, District Judge Jeremy

12   Fogel signed and entered the Judgment by Confession.  See Compl. Ex. C.  Genesis Fluid Solutions

13   moved for relief from such judgment on the grounds that the entry of the judgment was

14   procedurally void under the Federal Rules of Civil Procedure.  On March 28, 2011, District Judge

15   Fogel issued an order granting Genesis Fluid Solutions' motion and stating that the Federal Rules

16   of Civil Procedure require a party seeking to enforce a judgment by confession to file a complaint

17   under Rule 3 and to serve a summons under Rule 4.  See Compl. Ex. D.

18       On May 27, 2011, Press Rentals filed a Complaint in this Court against Genesis Fluid

19   Solutions and Hodges alleging breach of the Settlement Agreement.  On November 22, 2011,

20   Genesis Fluid Solutions and Hodges filed a Third-Party Complaint against Third-Party Defendants

21   Blue Earth, U.S. Bancorp, and U.S. Bank N.A. bringing claims that arose out of the alleged

22   payment failure of May 2010.  See Docket Item No. 48.  On May 11, 2012, Press Rentals filed a

23   Motion for Judgment on the Pleadings.  See Docket Item No. 90.  On August 31, 2012, this Court

24   issued an Order dismissing the Third-Party Complaint with leave to amend, and denied without

25   prejudice the Motion for Judgment on the Pleadings because it was premature.  See Docket Item

26   No. 97 ("8/31/2012 Order").

27

28

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

1    On September 14, 2012, Third-Party Plaintiffs Genesis Fluid Solutions and Hodges filed an

2    Amended Third-Party Complaint.  See Docket Item No. 100.  In this complaint, Third-Party

3    Plaintiffs brought three claims against Blue Earth for breach of contract, promissory estoppel, and

4    negligence; and three claims against U.S. Bank and Bancorp for breach of contract, wrongful

5    dishonor, and negligence.  Id.  Third-Party Plaintiffs seek damages of at least $159,376.35, a figure

6    that represents that amount Press Rentals seeks in its breach of contract action.  All claims in the

7    Amended Third-Party Complaint arise out of California law.

8    On October 1, 2012 Third-Party Defendants U.S. Bank and U.S. Bancorp filed a Motion to

9    Dismiss the Amended Third-Party Complaint.  See Docket Item No. 101.  On December 11, 2012,

10   the Court granted the Stipulated Dismissal of the Amended Third-Party Complaint against Blue

11   Earth, dismissing all claims asserted against Blue Earth with prejudice.  See Docket Item No. 112.

12   On February 6, 2013, the Court granted the Motion to Dismiss the Amended Third-Party

13   Complaint.  See Docket Item No. 114 ("2/6/2013 Order").  The claims brought by Genesis Fluid

14   Solutions were dismissed with prejudice, and the claims brought by Hodges were dismissed

15   without prejudice.  Id. at 6.

16   On March 6, 2013, Hodges filed a Second Amended Third-Party Complaint.  See Docket

17   Item No. 115.  On March 25, 2013, Third-Party Defendants U.S. Bank and U.S. Bancorp filed a

18   Motion to Dismiss the Second Amended Third-Party Complaint.  See Docket Item No. 116.  On

19   April 12, 2013, Press Rentals filed a Motion for Judgment on the Pleadings, or alternatively,

20   Summary Judgment.  See Docket Item No. 120.

21   **II.  LEGAL STANDARD**

22   **a.  Motion to Dismiss**

23   Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim in the

24   complaint with sufficient specificity to "give the defendant fair notice of what the . . . claim is and

25   the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

26   (internal quotations omitted).  A complaint which falls short of the Rule 8(a) standard may be

27   dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

28

5

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

**United States District Court**
For the Northern District of California

1  Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is "proper only

2  where there is no cognizable legal theory or an absence of sufficient facts alleged to support a

3  cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 606 F.3d 658, 664 (9th

4  Cir. 2010) (quoting Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)).  In considering whether

5  the complaint is sufficient to state a claim, the court must accept as true all of the factual

6  allegations contained in the complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While a

7  complaint need not contain detailed factual allegations, it "must contain sufficient factual matter,

8  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly,

9  550 U.S. at 570).  If a court grants a motion to dismiss, leave to amend should be granted unless the

10  pleading could not possibly be cured by the allegation of other facts.  Lopez v. Smith, 203 F.3d

11  1122, 1130 (9th Cir. 2000).  If amendment would be futile, however, a dismissal may be ordered

12  with prejudice.  Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996).

13           **b.  Motion for Judgment on the Pleadings**

14       "After the pleadings are closed—but early enough not to delay trial—a party may move for

15  judgment on the pleadings." Fed. R. Civ. P. 12(c).  Federal Rule of Civil Procedure 7(a) prescribes

16  when the pleadings are closed for the purposes of a motion for judgment on the pleadings, as it

17  "defines what filings are considered pleadings and declares which pleadings shall be filed with the

18  district court."  See Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005) (citation omitted).

19  Only the following pleadings are allowed under Rule 7(a): "a complaint and an answer; a reply to a

20  counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-

21  claim; a third-party complaint, if a person who was not an original party is summoned under the

22  provisions of Rule 14; and a third-party answer if a third-party complaint is served.  No other

23  pleading shall be allowed, except that the court may order a reply to an answer or a third-party

24  answer."  Id.

25

26

27

28

6

United States District Court
For the Northern District of California

1    **III. DISCUSSION**

2              **a.  Third-Party Defendants' motion to dismiss is granted with prejudice**

3              Hodges asserts three claims against Third-Party Defendants: breach of contract, wrongful

4    dishonor, and negligence.  Hodges' claims arise from Third-Party Defendants' alleged failure to

5    honor a check written by Hodges despite there being sufficient funds in the account to cover the

6    amount of the check.  For the reasons stated below, each claim is DISMISSED with prejudice.

7                          **i.  Breach of contract**

8              Under California law, a claim for breach of contract requires: "(1) existence of the contract;

9    (2) plaintiff's performance or excuse of nonperformance; (3) defendant's breach; and (4) damages

10   to plaintiff as a result of the breach."  <u>CDF Firefighters v. Maldonado</u>, 158 Cal. App. 4th 1226,

11   1239 (2008).  An agreement between corporations, when the corporations are the only named

12   parties to the agreement, only binds those corporations under California law and not their

13   employees, principals, or officers.  <u>See ViChip Corp. v. Lee</u>, 438 F. Supp. 2d 1087 (N.D. Cal.

14   2006).  "It is fundamental that a corporation is a legal entity that is distinct from its shareholders."

15   <u>Grosset v. Wenaas</u>, 42 Cal. 4th 1100, 1108 (2008).

16             Hodges previously brought a claim for breach of contract against Third-Party Defendants.

17   <u>See</u> Am. Third Party Compl.  On February 6, 2013, the Court dismissed the breach of contract

18   claim without prejudice because Hodges, by failing to point to a specific and particular contract,

19   did not sufficiently plead a contract or contractual relationship between him and Third-Party

20   Defendants.  <u>See</u> 2/6/2013 Order at 7.  Moreover, Hodges did not plead the specific provisions of

21   the alleged agreement which he asserted Third-Party Defendants breached.  <u>Id.</u>

22             Hodges' Second Amended Third Party Complaint attempts to correct these errors by

23   pleading new facts regarding the alleged contractual relationship.  <u>See</u> Second Am. Third Party

24   Compl. ¶¶ 40–44.  The new facts consist of contractual provisions drawn from a document

25   purported to be the written contract between Hodges and Third-Party Defendants.  <u>See id.</u> Ex. D.

26   Hodges interprets these provisions to mean that he was a party to the contract.  Third-Party

27   Defendants deny that they had a contract with Hodges; rather, Third-Party Defendants contend that

28
                                                         7

United States District Court
For the Northern District of California

1   their contract was with Genesis Water, which (as described above) was a corporate entity formed

2   by Hodges for the sole purpose of depositing funds and forwarding them to Press Rentals as

3   payment.

4          This document, titled "Deposit Account Agreement," does not contain the names of any

5   parties to the agreement.  Rather, it appears to be a generic document containing terms applicable

6   to all deposit accounts at U.S. Bank.  Hodges alleges that this agreement is the most recent version

7   known to him and that he has been unable to obtain from U.S. Bank the version of the agreement in

8   effect on the date the account was opened.  Because U.S. Bank has not denied that the terms in this

9   document were the terms contained in the alleged contract between U.S. Bank and Genesis Water,

10  the Court shall treat this document as the alleged contract for the purposes of U.S. Bank's Motion

11  to Dismiss.

12         Hodges concedes that the account was opened and held in Genesis Water's name and not

13  his own.  Nevertheless, Hodges maintains that he is a party to the contract based on his reading of

14  the Deposit Account Agreement, reproduced in the remainder of this paragraph.  The Deposit

15  Account Agreement states on page 3 under Definitions: "The words 'you' and 'yours' mean each

16  account owner and anyone else with authority to deposit, withdraw, or exercise control over an

17  account." Id. ¶ 42.  Hodges had this authority.  On page 2, the Deposit Account Agreement

18  describes itself as a booklet providing the general rules that apply to deposit accounts "you" have

19  with U.S. Bank. Id. ¶ 41.  The Deposit Account Agreement also states on page 4: "Each owner of

20  a personal account, or an agent for a non-personal account, acting alone, has the power to perform

21  all the transactions available to the account.  For example, each owner can: (1) make withdrawals

22  by whatever means are available for the account; . . . (4) sign or authenticate any document in

23  connection with the account . . . (5) give rights to others to access the account." Id. ¶ 42.  Finally,

24  pages 10 and 11 contain provisions relating to the circumstances under which U.S. Bank may

25  dishonor checks and other types of attempted withdrawals. Id. ¶ 44.  Hodges contends that these

26  terms render him an "account owner" and therefore a customer of U.S. Bank and a party to the

27  agreement.

28
Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court rejects this argument.  "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party.  If it is not, the case is over."  Oceanside 84, Ltd. v. Fid. Fed. Bank, 56 Cal. App. 4th 1441, 1448 (1997).

The terms of the Deposit Account Agreement are not reasonably susceptible to Hodges' interpretation.  The terms merely provide that an agent acting for the account owner may perform certain actions related to the account.  This does not transform that agent into a customer of the bank or a party to the agreement.  Furthermore, the fact that an agent shares many of the account owner's powers under the contract does not make that agent an account owner as well, and the Deposit Account Agreement distinguishes between account owners and agents.  It is not reasonable to interpret this document as providing that every person given authority to perform transactions available to the account is also an owner of the account and a party to the contract.

On these facts, Hodges fails to state a claim for breach of contract because he does not sufficiently allege that he was a party to the agreement.  "[S]omeone who is not a party to the contract has no standing to enforce it."  Jones v. Aetna Cas. & Sur. Co., 26 Cal. App. 4th 1717, 1722 (1994).  Hodges has now failed in his third attempt to plead a breach of contract and has pleaded facts that establish that the contract was only between Genesis Water and Third-Party Defendants.  It is clear that further amendment will not save Hodges' claim.  Although dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment, such is the case here.  Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

Accordingly, the Court DISMISSES with prejudice Hodges' claim for breach of contract against Third-Party Defendants.

### ii.  Wrongful dishonor

Hodges has amended his claim for wrongful dishonor, which the Court also dismissed earlier in the February 6, 2013 Order.  The amendments consist of the same new facts as discussed

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

United States District Court
For the Northern District of California

1    in the previous section, namely, Hodges' contention that the terms of the Deposit Account

2    Agreement render him a customer of U.S. Bank and a party to a contract with U.S. Bank.

3         Under the California Commercial Code, "[a] payor bank is liable to its customer for

4    damages proximately caused by the wrongful dishonor of an item.  Liability is limited to actual

5    damages proved and may include damages for an arrest or prosecution of the customer or other

6    consequential damages."  Cal. Com. Code § 4402(b).  The Code defines a "customer" as "a person

7    having an account with a bank or for whom a bank has agreed to collect items, including a bank

8    that maintains an account at another bank."  Id. § 4104(a)(5).  For the reasons explained above,

9    Hodges has failed to establish a contractual relationship with U.S. Bank sufficient to withstand a

10   motion to dismiss and thus cannot avail himself of the wrongful dishonor provision of the Code.

11        As before, Hodges relies on the line of case law first established in Kendall Yacht Corp. v.

12   United Cal. Bank, 50 Cal. App. 3d 949, 956 (1975), holding that a bank can sometimes be held

13   liable to the shareholders or officers of a corporation for the wrongful dishonor of a corporation

14   check.  But as before, Hodges has not alleged that he afforded personal guarantees on behalf of

15   Genesis Water or that it was immediately apparent that Genesis Water was not a separate corporate

16   entity.  Nor does Hodges' Second Amended Complaint show that it was foreseeable that a dishonor

17   or mismanagement of the Genesis Water account would result in harm to his personal credit and

18   reputation generally, let alone vis-à-vis the Settlement Agreement with Press Rentals.

19        Hodges' newly-pleaded facts allege (wrongly, as discussed above) that he was a customer

20   of U.S. Bank based on provisions in the Deposit Account Agreement, but the issue of whether

21   Hodges was a "customer" as defined by the Deposit Account Agreement is different from the issue

22   of whether Hodges was a "customer" as defined by the wrongful dishonor statute.  Hodges' Second

23   Amended Complaint introduces nothing new regarding the latter.

24        Hodges' newly-amended wrongful dishonor claim contains no new relevant factual

25   allegations and fails to state a claim for the same reasons as before.  It is clear that Hodges cannot

26   save his claim by amendment.

27        Accordingly, the Court DISMISSES this claim with prejudice.

28
                                                10

### iii.  Negligence

Hodges' final cause of action against U.S. Bank and Bancorp is for negligence.  To state a claim for negligence under California law, a plaintiff must allege: (1) duty; (2) breach of that duty; (3) injury resulting from the breach; and (4) damages.  Huggins v. Longs Drug Stores California, Inc., 6 Cal. 4th 124, 129 (1993).  Here, Hodges claims that U.S. Bank acted negligently in failing to honor the May 28, 2010 check.  However, as explained above, Hodges has not sufficiently established a contractual breach, nor has he established that he was a "customer" of U.S. Bank for the purpose of his wrongful dishonor claim.  See Rodriguez v. Bank of the West, 162 Cal. App. 4th 454, 461 (2008) ("A bank's basic duty of care—to act with reasonable care in its transactions with its customers—arises out of the bank's contract with its customer.") (citing Cal. Com. Code § 4104(a)(5)).

Accordingly, Hodges' claim of negligence will be DISMISSED with prejudice.  Dismissal with prejudice is warranted because Hodges' only argument that Third-Party Defendants breached a duty to him is based on an alleged contract to which Hodges is not a party, as discussed above.

### b.  Plaintiff's motion for judgment on the pleadings is granted in part and denied in part

Defendants contend that the motion is premature because the pleadings are not yet closed because Third-Party Defendants have not yet filed an answer to the Third-Party Complaint. However, this Order dismisses the Third-Party Complaint with prejudice and the Court may now rule on the motion for judgment on the pleadings.

Plaintiff moves for judgment on the pleadings in accordance with the Settlement Agreement, seeking the following relief (approximate amounts as calculated by Plaintiff):

1) The remaining balance on the principal sum due in the Settlement Agreement: $50,799.97.

2) Interest consisting of 10% per annum from June 26, 2009, calculated as $5,233.09 as of July 8, 2010.

3) Attorney's fees and costs prior to June 26, 2009, calculated as $103,343.29.

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

4)   Interest on the damages awarded in accordance with law.

5)   Costs of the instant suit.

6)   Attorney's fees for the instant suit, as provided for in the Settlement Agreement.

The parties present the following issues for the Court's decision: 1) whether Defendants breached the Settlement Agreement, 2) whether judicial estoppel bars Defendants from denying the enforceability of the Cognovit Clause, 3) whether the Cognovit Clause contains an unenforceable penalty, and 4) whether Plaintiff breached the duty of good faith and fair dealing and the duty to mitigate damages.

### i.   Whether Defendants breached the Settlement Agreement

Defendants deny that they breached the Settlement Agreement, conceding that they were late in submitting the May 26, 2010 payment but arguing that Plaintiff waived the breach by accepting a late check on or around May 28, 2010.  Docket Item No. 122, Defendant's Opposition at 19.  Plaintiff attempted to cash this check, was denied because U.S. Bank incorrectly believed the account to contain insufficient funds, and on July 8, 2010 Plaintiff informed Defendants of the breach.  Id.  Defendants did not submit a replacement check for the May 26, 2010 payment until August 13, 2010 because Defendants allege to have mistakenly believed that Plaintiff kept possession of the check after its rejection by U.S. Bank.  Id.

The Settlement Agreement emphasizes that "time is of the essence regarding the payment schedule."  Even when a contract does not contain an explicit "time is of the essence" provision, California law provides that payment of money must be immediate.  If the obligation "is in its nature capable of being done instantly-as, for example, if it consists in the payment of money only-it must be performed immediately upon the thing to be done being exactly ascertained."  Cal. Civil Code § 1657.

Defendants contend that Plaintiff's acceptance of the check two days after its due date constitutes Plaintiff's waiver of the delay.  Including "time is of the essence" in a document does not necessarily require a court to enforce this provision where subsequent conduct and the bargain itself do not contemplate time will be of the essence.  Nash v. Super. Ct., 86 Cal. App. 3d 690, 696

12

1    (1978)); see also Diamond Woodworks, Inc. v. Argonaut Ins. Co., 109 Cal. App. 4th 1020, 1038

2    (2003) ("[W]here the subsequent conduct of parties is inconsistent with and clearly contrary to

3    provisions of the written agreement, the parties' modification setting aside the written provisions

4    will be implied[.]")  In other words, a "time is of the essence" clause does not apply where a party

5    in whose benefit it acts waives it.  A party may waive strict performance by the other merely by

6    failing to insist on it.  Morehead v. Scribner, 2009 WL 874000, at *10 (Cal. Ct. App. Apr. 2, 2009)

7    (citing Johnson v. Goldberg, 130 Cal. App. 2d 571, 577 (1955)).  A party may also waive a "time is

8    of the essence" provision by continuing to deal with the other party after the date specified in the

9    contract and without establishing a new time requirement.  Id. (citing Galdjie v. Darwish, 113 Cal.

10   App. 4th 1331, 1342 (2003)); see also Martinez v. Crayton, 2007 WL 765959, at *10 (Cal. Ct.

11   App. Mar. 15, 2007).

12        However, a recurring theme in these cases is that the parties attempting to enforce "time is

13   of the essence" provisions evinced a *pattern* of conduct implying waiver.  Under the cases cited by

14   Defendants, the parties attempting to enforce the provisions generally excused a breach for an

15   extended period of time and continued performance without noticing the breach to the other party.

16   For example, in Lohman, the party attempting to enforce the provision failed to cancel the contract

17   and accepted payments for a year after the breach.  In Morehead, the party attempting to enforce

18   the provision failed to give the other side notice of breach and performed several contractual

19   obligations after the breach.  In Johnson, the party attempting to enforce the provision continued to

20   perform its end of the bargain and gave no notice of breach until suit was brought.

21        Here, Plaintiff was willing to accept the May 26, 2010 payment two days late but

22   subsequently refused to accept further payments after the check was rejected by U.S. Bank, more

23   an isolated incident than a pattern of failing to insist on timely payment.  Moreover, Plaintiff did

24   not continue to deal with Defendants for an extended period of time after the breach.  Plaintiff

25   informed Defendants of the breach within a two month period.  Under these circumstances, the

26   Court finds that the delay in payment was not waived and that Defendants breached the Settlement

27   Agreement.

28

13

United States District Court
For the Northern District of California

1
2

### ii. Whether Defendants are judicially estopped from denying the enforceability of the provision for past costs and attorney's fees

3        Plaintiff argues that Defendants are judicially estopped from arguing that the provision for

4   costs and attorney's fees from the underlying action is unenforceable.  The doctrine of judicial

5   estoppel, sometimes called the doctrine of preclusion of inconsistent positions, precludes a party

6   from gaining an advantage by taking one position, and then seeking a second advantage by taking

7   an incompatible position.  Blix St. Records, Inc. v. Cassidy, 191 Cal. App. 4th 39, 47 (2010).  The

8   doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from

9   opponents' unfair strategies.  See Aguilar v. Lerner, 32 Cal. 4th 974, 986 (2004).  Judicial estoppel

10  is an equitable doctrine invoked by courts in their discretion.  Id.; see also Yanez v. United States,

11  989 F.2d 323, 326 (9th Cir. 1993).  Because of its harsh consequences, the doctrine should be

12  applied with caution and limited to egregious circumstances.  Gottlieb v. Kest, 141 Cal. App. 4th

13  110, 132 (2006).

14        The doctrine should apply when: (1) the same party has taken two positions; (2) the

15  positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was

16  successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as

17  true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a

18  result of ignorance, fraud, or mistake.  Jackson v. County of Los Angeles, 60 Cal. App. 4th 171,

19  183 (1997).

20        The Court is not persuaded that judicial estoppel should apply here.  To show that

21  Defendants took inconsistent positions, Plaintiff presents the following argument: Genesis and

22  Hodges, represented by counsel, agreed to the terms of the settlement agreement in front of Judge

23  Trumbull.  Counsel for Genesis assured the Court that the underlying action could be dismissed

24  because "all of Eagle's rights are reserved under the cognovit note."[1]  Eagle's counsel did not

25  object to this on the condition that the agreement "fully protect Eagle's rights."  The Settlement

26  Agreement incorporated a Cognovit Clause that, on its face, did just that.  That clause expressly

27

---

[1] During the proceedings before Judge Trumbull, Plaintiff Press Rentals was known as Eagle.

28

14

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    provided that, "[i]n the event that Genesis does not fully comply with the payment provisions of

2    the Agreement within the time periods stated herein, Eagle is permitted to file the ... Judgment by

3    Confession."  The Court relied on the parties' representations that the case was settled to dismiss

4    the case.  Now, Genesis takes the inconsistent positions that the settlement agreement is void as

5    against public policy; that the provision for damages in the event of breach is unreasonable; that

6    Genesis' parent company was actually responsible for fulfilling the terms of the settlement; and

7    that Eagle was not permitted to file the Judgment by Confession.

8        Plaintiff cites a number of cases applying judicial estoppel, giving <u>Blix St. Records</u> the

9    most detailed treatment because its facts are the closest to ours.  In <u>Blix St. Records</u>, a recording

10   company which had license to exploit the rights to a deceased singer's audio recordings was

11   estopped from denying the enforceability of a settlement agreement with the owners of the rights.

12   Like Genesis here, the recording company argued that the settlement agreement it agreed to on

13   advice of counsel was unenforceable.  The court gave that argument short shrift.  It did not matter

14   whether the company would be bound by an otherwise unenforceable contract.  What mattered was

15   that the parties did not object to the terms of the settlement in court and represented to the court

16   that they believed the settlement was enforceable.

17       It seems to the Court that <u>Blix St. Records</u> cannot stand for the proposition that a party

18   should *generally* be judicially estopped from denying the enforceability of a particular provision of

19   a settlement agreement when that party earlier represented to a court that it believed the settlement

20   agreement, as a whole, to be enforceable.  Under Plaintiff's reasoning, the parties "represent" to the

21   court that they believe the agreement to be enforceable simply by executing it.  Such a broad

22   application of the rule would almost entirely foreclose parties from ever contesting that a provision

23   in a settlement agreement constitutes an illegal penalty, because parties, at least in theory, would

24   not execute settlement agreements they believed to be unenforceable.

25       Furthermore, in <u>Blix Street Records</u>, the settlement agreement was unenforceable because it

26   lacked the required formalities: the signatures of the parties or an oral stipulation before the court.

27   Thus, the party contesting enforceability was attempting to argue that the entire contract should be

28

15

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

1   invalidated because that party had not "agreed" to the contract by way of its signature, even though

2   that same party had earlier assured the trial judge of its enforceability.  The Court does not find that

3   Defendants' conduct here rises to that level of duplicity and therefore declines to invoke judicial

4   estoppel.

### iii.  Whether the Cognovit Clause contains an unenforceable penalty

6          The parties disagree as to whether the Cognovit Clause's provision for attorney's fees

7   incurred by Plaintiff prior to June 26, 2009 in the underlying action constitutes an unenforceable

8   penalty.[2]  Defendants contend that the provision calls for enforcement of an illegal penalty.

9   Plaintiff contends, to the contrary, that the provision does not fall under the definition of

10  "liquidated damages" and that even if it does, it is a valid liquidated damages provision in a

11  contract between the parties.  Although the Settlement Agreement does not use the terms

12  "liquidated damages" or "penalty," a court should look to its substance in determining its meaning.

13  Greentree Fin. Grp., Inc. v. Execute Sports, Inc., 163 Cal. App. 4th 495 (2008).

14         Had there been no breach, Defendants would have paid, in total, only the principal amount

15  of $152,000.  Defendants have thus far paid $101,200.03 and the remaining principal is

16  $50,799.97.  Plaintiff's Complaint requests "approximately" $159,376.35, which is the total of: the

17  amount of the remaining principal, interest on the remaining principal, and costs and attorney's

18  fees from the underlying action.  In addition, the Complaint seeks interest on the $159,376.35

19  amount as well as costs and attorney's fees in connection with the instant action to enforce the

20  Settlement Agreement.

21         Plaintiff argues that the provision for attorney's fees from the underlying action does not

22  constitute liquidated damages because it does not fix the amount of damages to be paid in

23  anticipation of breach.  To constitute liquidated damages, the contractual provision must: (1) arise

24  from a breach, and (2) provide a fixed and certain sum.  Ruwe v. Cellco P'ship, 613 F. Supp. 2d

25  1191, 1196 (N.D. Cal. 2009).  Plaintiff reasons that the provision for attorney's fees from the

---

[2] For ease of reference, the Court in this Order shall refer to the Cognovit Clause's provision for attorney's fees incurred by Plaintiff prior to June 26, 2009 in the underlying action as simply "attorney's fees from the underlying action."

16

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   underlying action does not constitute a "fixed and certain" amount because contractually-provided

2   attorney's fees must be reasonable and are subject to adjustment by the court entering the judgment

3   if they are not reasonable.  See Milman v. Shukhat, 22 Cal. App. 4th 538, 546 (1994).  Thus, it was

4   impossible to fix the exact amount of attorney's fees.  Plaintiff's argument is somewhat novel and

5   neither the parties nor the Court have identified case law specifically addressing this question.

6          However, the Court finds that the amount of attorney's fees from the underlying action was

7   sufficiently "fixed and certain" to fall within the definition of liquidated damages, notwithstanding

8   that the fees may be subject to adjustment.  The requirement that liquidated damages be fixed and

9   certain arises out of the concern that parties possess some degree of certainty regarding their

10  liability in the event of a breach.  Ruwe, 613 F. Supp. 2d at 1198.  It is significant that the provision

11  for costs and attorney's fees from the underlying action was limited to the costs and fees incurred

12  by Plaintiff prior to June 26, 2009.  By the time Plaintiff and Defendants, both represented by

13  counsel, entered into the Settlement Agreement on or around July 22, 2009, the parties should have

14  had fairly accurate estimates in mind as to the amount of those costs and fees.  To insist that the

15  attorney's fees are not sufficiently "fixed and certain" to constitute liquidated damages because a

16  court may later adjust them is unwarranted and inconsistent with the policy considerations

17  underlying California's treatment of liquidated damages provisions.  The objective of a liquidated

18  damages clause is to stipulate a pre-estimate of damages in order that the contracting parties may

19  know with reasonable certainty the extent of liability in the event of breach.  El Centro Mall, LLC

20  v. Payless ShoeSource, Inc., 94 Cal. Rptr. 3d 43 (2009).  The cases do not insist on the rigid

21  interpretation of the "fixed and certain" requirement that Plaintiff now advocates.

22          Having found that the provision for attorney's fees from the underlying action is a provision

23  liquidating damages in the event of a breach, the Court's next task is to determine whether the

24  provision is enforceable.  Whether the amount to be paid upon breach of a contractual term should

25  be treated as liquidated damages or as an unenforceable penalty is a question of law.  Harbor Island

26  Holdings v. Kim, 107 Cal. App. 4th 790, 794 (2003).

27

28
Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

1        The Court begins with the language of California Civil Code § 1671(b): "[A] provision in a

2   contract liquidating the damages for the breach of the contract is valid unless the party seeking to

3   invalidate the provision establishes that the provision was unreasonable under the circumstances

4   existing at the time the contract was made."  In interpreting this statute, the California Supreme

5   Court has noted: "A liquidated damages clause will generally be considered unreasonable, and

6   hence unenforceable under § 1671(b), if it bears no reasonable relationship to the range of actual

7   damages that the parties could have anticipated would flow from a breach.  The amount set as

8   liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a

9   fair average compensation for any loss that may be sustained.'  In the absence of such relationship,

10  a contractual clause purporting to predetermine damages 'must be construed as a penalty.'"

11  Ridgley v. Topa Thrift & Loan Assn., 17 Cal. 4th 970, 977 (1998).

12       Defendants rely primarily on Greentree, 163 Cal. App. 4th 495 and Sybron Corp. v. Clark

13  Hosp. Supply Corp., 76 Cal. App. 3d 896 (1978).  The facts of Greentree are similar to the instant

14  case.  Greentree concerned a settlement agreement arising out of an earlier case where the plaintiff

15  had sued defendant for breach of a $45,000 contract.  The parties settled the case, with defendant

16  agreeing to pay plaintiff a total of $20,000 in two installments.  If defendant defaulted on either one

17  of its installment payments, plaintiff would be entitled to immediately have judgment entered

18  against defendant for all amounts prayed as set forth in plaintiff's complaint in the earlier action,

19  including interest, attorney fees and costs, less any amounts already paid by defendant.  Defendant

20  defaulted on the first installment payment of $15,000.  Plaintiff submitted to the court a proposed

21  judgment for $61,232.50, consisting of $45,000 in damages, $13,912.50 in prejudgment interest,

22  $2,000 in attorney fees, and $320 in costs, which was entered by the trial court.  On appeal, the

23  judgment was reduced to $20,000, plus postjudgment interest and costs.  The appeals court found

24  the $61,232.50 judgment bore no reasonable relationship to the range of actual damages the parties

25  could have anticipated from a breach of the stipulation to settle the dispute for $20,000.

26       The facts of Sybron are similar as well.  A seller of hospital beds sued the buyers for almost

27  $144,000; the buyers counterclaimed, arguing the beds were defective.  The parties reached a

18

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

United States District Court
For the Northern District of California

settlement, under which the buyers would pay $72,000 plus interest in 12 monthly installments. The settlement agreement provided that if the buyers defaulted, a stipulated judgment for $100,000 could be entered.  The buyers did default, and the stipulated judgment was entered by the trial court.  The court concluded the parties' liquidated damages figure, and the trial court's judgment enforcing it, "failed to take into account the need for proportion in damages—the critical item in evaluating penalty and forfeiture."  The stipulated judgment of $100,000, entered after the buyers defaulted on installment payments totaling $30,000 out of a settlement agreement to pay $72,000, could not be enforced.  To do so "would result in a $28,000 penalty for delay in payment of $30,000, a penalty which bears no rational relationship to the amount of actual damages suffered by respondent."

Plaintiff attempts to distinguish Sybron by pointing out that it was decided under a pre-amended version of § 1671 making any liquidated damages clause presumptively void, which is contrary to the contemporary version of § 1671(b) making liquidated damages clauses presumptively valid.  However, Sybron was cited by the California Supreme Court, and its holding approved, in a case analyzing the postamendment version of § 1671.  Ridgley, 17 Cal. 4th at 978.

Next, Plaintiff contends that Greentree and Sybron are distinguishable because the plaintiffs in those cases severely compromised their claims: the plaintiff in Greentree settled for $20,000 on a $45,000 contract, and the Sybron plaintiffs settled for $72,000 on a $144,000 contract.  The instant case is different, argues Plaintiff, because Plaintiff was willing to settle only for the full amount of the contract because it was "all but guaranteed to recoup that, along with its attorney fees, after trial."

However, the holdings of Greentree and Sybron do not rest on the strength of the plaintiffs' original claims or the magnitude of difference between the settlement amount and the value of the underlying contract.  Rather, the courts in those cases were concerned with the difference between the settlement amounts as compared to the amounts the plaintiffs were seeking to recover under the breached settlement agreements.  Here, granting Plaintiff its requested relief would result in an award of $159,376.35 on a remaining principal balance of $50,799.97.  Looking at the amounts

19

Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS

United States District Court
For the Northern District of California

1  alone, the Court has great difficulty accepting Plaintiff's contention that this bears a reasonable

2  relationship to the damages flowing from Defendants' breach of the Settlement Agreement.

3  Moreover, even ignoring that Plaintiff seeks to recover over three times the amount due, it is

4  difficult to imagine how costs and attorney's fees incurred before June 26, 2009 bear *any*

5  relationship to the actual damages flowing from a breach of the Settlement Agreement that

6  occurred in May of 2010.

7      Accordingly, the court finds that the provision for costs and attorney's fees from the

8  underlying action is an unenforceable penalty and DENIES Plaintiff's motion to the extent it seeks

9  to recover those amounts.

10      **iv.  Whether Plaintiff breached the duty of good faith and fair dealing and**

11      **the duty to mitigate damages**

12      Defendants argue that, by refusing to continue dealing with Defendants after the May 26,

13  2010 payment was late, Plaintiff breached the duty of good faith and fair dealing and the duty to

14  mitigate damages.

15      The doctrine of mitigation of damages holds that "[a] plaintiff who suffers damage as a

16  result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those

17  damages and will not be able to recover for any losses which could have been thus avoided."

18  Shaffer v. Debbas, 17 Cal. App. 4th 33, 41 (1993); accord Seabord Music Co. v. Germano, 24 Cal.

19  App. 3d 618, 622–623 (1972).  A plaintiff may not recover for damages avoidable through ordinary

20  care and reasonable exertion.  Mayes v. Sturdy Northern Sales, Inc., 91 Cal. App. 3d 69, 85 (1979).

21  The duty to mitigate damages does not require an injured party to do what is unreasonable or

22  impracticable.  Valencia v. Shell Oil Co., 23 Cal. 2d 840, 846 (1944).  "The rule of mitigation of

23  damages has no application where its effect would be to require the innocent party to sacrifice and

24  surrender important and valuable rights."  Seaboard Music Co. v. Germano, 24 Cal. App. 3d at

25  623.

26      Defendants contend that the costs and attorney's fees Plaintiff has expended in connection

27  with Defendants' breach of the Settlement Agreement constitute an unreasonable failure to mitigate

28

20

1  damages.  Defendants essentially argue that Plaintiff should have avoided incurring costs and

2  attorney's fees by choosing not to enforce its contractual rights and excusing Defendants' breach.

3  The duty to mitigate does not require a party to take actions that would impair its rights.

4      Defendants next argue that Plaintiff breached the covenant of good faith and fair dealing by

5  refusing to continue accepting payments after Defendants missed the May 26, 2010 payment, filing

6  the Judgment by Confession, and filing the instant action when the Judgment by Confession was

7  invalidated.

8      Every contract imposes upon each party a duty of good faith and fair dealing in its

9  performance and its enforcement.  <u>Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.</u>,

10  2 Cal. 4th 342, 371 (1992) (citing Rest. 2d Contracts, § 205.).  The covenant of good faith finds

11  particular application in situations where one party is invested with a discretionary power affecting

12  the rights of another.  <u>Id.</u> at 372.  Such power must be exercised in good faith.  <u>Id.</u> (citing <u>Perdue v.</u>

13  <u>Crocker National Bank</u>, 38 Cal. 3d 913, 923 (1985)).

14      However, the covenant of good faith may not be read to prohibit a party from doing that

15  which is expressly permitted by an agreement.  <u>Carma Developers</u>, 2 Cal. 4th at 374.  Defendants

16  argue that Plaintiff's actions were not authorized by the Settlement Agreement because federal law

17  does not recognize judgments by confession and the provision allowing for attorney's fees incurred

18  prior to July 2009 is an unenforceable penalty.  Defendants misconstrue the law.  Under traditional

19  contract principles, the implied covenant of good faith is read into contracts "in order to protect the

20  express covenants or promises of the contract, not to protect some general public policy interest not

21  directly tied to the contract's purpose.  <u>Foley v. Interactive Data Corp.</u>, 47 Cal. 3d 654, 690 (1988).

22  Thus, the correct inquiry in a covenant of good faith case is whether the contract allows a particular

23  action to be taken, not whether the law would uphold the terms of the Settlement Agreement.

24  Because the Settlement Agreement expressly authorized Plaintiff's actions, there was no breach of

25  the implied covenant of good faith and fair dealing.

26      The Court does not find that Plaintiff acted unreasonably or in bad faith by filing the

27  Judgment by Confession when Plaintiff believed it would be effective, particularly when

28

21

Defendants had bargained for that particular legal mechanism to be written into the Settlement Agreement.  Although Plaintiff's costs and legal fees have continued to increase because the Judgment by Confession was later invalidated, it would place too high a burden on Plaintiff to expect it to have predicted that outcome.  And the unenforceable penalty contained in the Settlement Agreement no doubt caused the contribution of several hours of legal work to this case from both sides, but this circumstance cannot fairly be blamed solely on one party when both sides were responsible for drafting and executing the Settlement Agreement.  In bringing their good faith and duty to mitigate arguments, Defendants essentially seek to cast the entirety of the blame for drafting and executing this problematic Settlement Agreement on Plaintiff.  Such an outcome is not justified under the facts of this case.

## IV.  CONCLUSION

For the foregoing reasons, Third-Party Defendants' Motion to Dismiss is GRANTED with prejudice.  Third-Party Defendants are awarded judgment against Defendants.  Third-Party Defendants shall submit a proposed judgment within 10 days of the date of this Order.

Plaintiff's Motion for Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART.  Plaintiff is awarded judgment against Defendants pursuant to the Settlement Agreement and consistent with this Order.  Plaintiff shall submit a proposed judgment within 10 days of the date of this Order.

As this Order is dispositive of the case, the Court declines to rule on Plaintiff's Motion for Summary Judgment.  Third-Party Defendants' Request for Judicial Notice is DENIED as the Court did not consider those documents in rendering this Order.

**IT IS SO ORDERED**

Dated: January 3, 2014

_____
EDWARD J. DAVILA
United States District Judge

22
Case No.: 5:11-CV-02579-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS; GRANTING THIRD-PARTY DEFENDANTS' MOTION
TO DISMISS